# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MODORAL BRANDS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:20-cv-01694-CFC |
| | ) | |
| SWEDISH MATCH NORTH AMERICA | ) | |
| LLC, PINKERTON TOBACCO CO. LP, | ) | |
| AND NYZ AB, | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS SWEDISH MATCH NORTH AMERICA LLC AND PINKERTON TOBACCO CO. LP'S OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL DISMISSAL AND TO TRANSFER OR, IN THE ALTERNATIVE, TO STAY

Christopher Viceconte (No. 5568)
GIBBONS, P.C.
300 Delaware Avenue, Suite 1015
Wilmington, DE 19801
Tel: (302) 518-6322
Fax: (302) 397-2050
cviceconte@gibbonslaw.com

*Of Counsel:*

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4004
Fax: (202) 408-4400

*Counsel for Swedish Match North America LLC and Pinkerton Tobacco Co. LP*

Dated: February 4, 2021

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     BACKGROUND ..........................................................................................2

III.    THIS ACTION SHOULD BE TRANSFERRED ..........................................4

        A.      Legal Standard.................................................................................4

        B.      The First-filed Forum Is Preferred ...............................................6

        C.      The Balance of Conveniences Heavily Favors Transfer of this
                Action to California Under 28 U.S.C. § 1404(a) ................................9

                1.      This Case Could Have Been Brought in California..................9

                2.      Private Interest Factors Favor Transfer ...................12

                3.      Public Interest Factors Favor Transfer.....................17

IV.     ALTERNATIVELY, THIS ACTION SHOULD BE STAYED...................19

V.      COUNT I SHOULD BE DISMISSED...........................................20

VI.     CONCLUSION...........................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Advanta Corp. v. Visa U.S.A., Inc.*,
   1997 WL 88906 (E.D. Pa. Feb. 19, 1997) ........................................................8

*Am. Cyanamid Co. v. Eli Lilly & Co.*,
   903 F. Supp. 781 (D.N.J. 1995) .........................................................................12

*Am. Equip. Corp. v. Wikomi Mfg. Co.*,
   630 F.2d 544 (7th Cir. 1980) .............................................................................19

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
   444 F.3d 1356 (Fed. Cir. 2006) .........................................................................10

*Brunswick Corp. v. Chrysler Corp.*,
   408 F.2d 335 (7th Cir. 1969) .............................................................................19

*Corixa Corp. v. IDEC Pharm. Corp.*,
   2002 WL 265094 (D. Del. Feb. 25, 2002).................................................14, 16

*Crosley Corp. v. Hazeltine Corp.*,
   122 F.2d 925 (3d Cir. 1941) ...............................................................................6

*Ebates Performance Mktg. v. MyMail, Ltd.*,
   2021 U.S. Dist. LEXIS 7786 (N.D. Cal. Jan. 13, 2021)..........................9, 10, 11

*Elecs. For Imaging, Inc. v. Coyle*,
   340 F.3d 1344 (Fed. Cir. 2003) .........................................................................10

*Fuisz Pharma LLC v. Theranos, Inc.*,
   2012 WL 1820642 (D. Del. May 18, 2012) ............................................6, 17, 18

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .........................................................................17

*Genentech, Inc. v. Eli Lilly & Co.*,
   998 F.2d 931 (Fed. Cir. 1993) .............................................................................5

*Horton Archery, LLC v. Am. Hunting Innovations, LLC*,
    2010 WL 395572 (N.D. Ohio Jan. 27, 2010) ......................................................8

*Interactive Fitness Holdings, LLC, v. Icon Health & Fitness, Inc.*,
    2011 WL 1302633 (N.D. Cal. Apr. 5, 2011)................................................7, 8, 9

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ........................................................5, 12, 17

*Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*,
    416 F. Supp. 2d 1048 (E.D. Pa. 2006) ................................................5

*Kloster Speedsteel AB v. Crucible, Inc.*,
    793 F.2d 1565 (Fed. Cir. 1986) ......................................................19

*Lancer Ins. Co. v. Harleysville Mut. Ins.*,
    108 F. Supp. 3d 275 (E.D. Pa. 2015)........................................20, 21

*Lawrence v. Xerox Corp.*,
    56 F. Supp. 2d 442 (D.N.J. 1999)......................................................6

*LG Elecs., Inc. v. First Int'l Computer, Inc.*,
    138 F. Supp. 2d 574 (D.N.J. 2001) ................................................11

*Margulis v. Stryker Corp.*,
    2019 U.S. Dist. LEXIS 214965 (D.N.J. Nov. 12, 2019) ...................13

*Maximum Human Performance, Inc. v. Dymatize Enter, Inc.*,
    2009 WL 2778104 (D.N.J. Aug. 27, 2009) ........................................4

*Princeton Digit. Image Corp. v. Konami Digit. Entm't Inc.*,
    2017 WL 239326 (D. Del. Jan. 19, 2017) ........................................22

*Segan LLC v. Zynga Inc.*,
    2014 U.S. Dist. LEXIS 35685 (D. Del. Mar. 19, 2014)....................19

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
    543 F. Supp. 2d 404 (E.D. Pa. 2008)............................................7, 8

*Sonion Nederland BV v. Asius Techs. LLC*,
    2011 WL 5826047 (D. Del. Nov. 18, 2011)......................................9

*Synthes, Inc. v. Knapp,*
    978 F. Supp. 2d 450 (E.D. Pa. 2013)................................................................4, 6

*Temp. Servs. v. Am. Int'l Grp.,*
    2008 U.S. Dist. LEXIS 136676 (D.S.C. July 8, 2008).......................................22

*Time Warner Cable, Inc. v. USA Video Tech. Corp.,*
    520 F. Supp. 2d 579 (D. Del. 2007)................................................................6, 7

*Viam Corp. v. Iowa Exp.-Imp. Trading Co.,*
    84 F.3d 424 (Fed. Cir. 1996) .............................................................................11

*Wacoh Co. v. Kionix Inc.,*
    845 F. Supp. 2d 597 (D. Del. 2012).............................................................12, 14

*Yang v. Odom,*
    409 F. Supp. 2d 599 (D.N.J. 2006) .....................................................................9

## Federal Statutes

18 U.S.C. § 1836.......................................................................................................9

21 U.S.C. § 387j.......................................................................................................3

28 U.S.C. § 1338.......................................................................................................9

28 U.S.C. § 1391.....................................................................................................12

28 U.S.C. § 1391(b)(1)............................................................................................12

28 U.S.C. § 1391(c)(2)............................................................................................12

28 U.S.C. § 1404.................................................................................................5, 23

28 U.S.C. § 1404(a) .................................................................................................9

## Rules

Fed. R. Civ. P. 12(b)(1).....................................................................................20, 21

Fed. R. Civ. P. 12(b)(6).................................................................................20, 21, 22

Fed. R. Civ. P. 12(e).........................................................................................20, 21

## I.      INTRODUCTION

Defendants Swedish Match North America LLC ("SMNA") and Pinkerton Tobacco Co. LP (collectively, "Defendants") move to transfer this duplicative action to the Central District of California ("C.D. Cal."), where two first-filed actions that involve the same patent, the same trade secrets, and the same (now rebranded) product are pending.  For at least the reasons explained below, a transfer will be more efficient, reduce expenses, and avoid inconsistent judgments.

Defendants also move to dismiss Count I of the Complaint. This threadbare count seeks a declaration that Modoral has "freedom" from the "alleged trade secret misappropriation" at issue in California. Modoral thus seeks to litigate the California trade secret claims—even though it is not party to them or the alleged misappropriation. Indeed, Modoral provides no explanation of why it purportedly should be "free" from any "obligation" for trade secret misappropriation. Aside from typifying a claim in need of transfer, Count I also suffers from a prudential standing defect.

Alternatively, for the reasons below, the Court should stay this action.

## II.    BACKGROUND

Two actions in the C.D. Cal., both originally filed in February 2020, already address Modoral's claims in its Complaint: *Pinkerton Tobacco Co., LP v. Kretek International, Inc.*, No. 2:20-cv-08729-SB-MRW (C.D. Cal.) (the "California trade secret action"[1]) and *Pinkerton Tobacco Co., LP v. The Art Factory AB*, No. 2:20-cv-01322-RGK-MRW (C.D. Cal.) (the "California patent action") (collectively, the "California actions").

In the California patent action, Defendants, along with patent co-owner wm17 Holding GmbH, accuse The Art Factory AB, TillCe AB, Kretek International, Inc. ("Kretek"), and Dryft Sciences LLC ("Dryft Sciences") of infringing U.S. Patent 9,161,908 ("the '908 patent"). The accused product is the nicotine pouch product "DRYFT." In the California trade secret action, Defendants accuse Kretek and Dryft Sciences of misappropriating Defendants' trade secrets related to the commercial manufacture of nicotine pouch products.

Modoral purportedly acquired the DRYFT product through an Asset Purchase Agreement with Dryft Sciences. D.I. 1 ¶ 10. Defendants first learned of the acquisition when Modoral's parent, British American Tobacco, p.l.c. ("BAT"), issued a press release disclosing the acquisition and the rebranding of DRYFT as

---

[1] The California trade secret action was originally filed in the Western District of Kentucky, but was subsequently transferred to the Central District of California.

"VELO." *See* Declaration of Christopher Viceconte ("Viceconte Dec."), submitted herewith, Ex. A; *id.* Ex. B (DRYFT webpage, stating "DRYFT IS NOW VELO"). Under the U.S. Food and Drug Administration's rules, VELO must be the same as DRYFT. *See* 21 U.S.C. § 387j.[2]

Given the press release, Defendants, on November 17, 2020, sent BAT a letter notifying it of the California actions. Viceconte Dec., Ex. C. The letter formally notified BAT of Defendants' claims against Dryft Sciences in the California actions and asked that BAT take steps to avoid any trade secret misappropriation or patent infringement. It also asked if BAT intended to intervene in the California actions or if BAT would agree to be bound by any judgment rendered against Dryft Sciences in the California actions.

Modoral responded by filing this action seeking a declaration that the '908 patent is invalid and that the rebranded DRYFT product does not infringe the '908 patent. D.I. 1 ¶¶ 15–17, 22–33. But whether the '908 patent is valid and whether DRYFT infringes are already issues in the first-filed California patent action. Modoral also seeks a declaration that Modoral has "freedom to operate its business without obligation to Defendants for any alleged trade secret misappropriation" arising from its acquisition of assets from Dryft Sciences. *Id.* ¶¶ 14, 19–21. But here

---

[2] Defendants' November 17, 2020, letter did not refer to "VELO" or any "VELO" products. Modoral's Complaint thus concerns the rebranded version of DRYFT, not any of Modoral's previously existing VELO products.

again, the "alleged trade secret misappropriation" necessarily implicates the allegations made in the first-filed California trade secret action.

For nearly a year now, substantial resources have been expended in connection with the California actions over the same issues raised in Modoral's Complaint. Dryft Sciences filed its answer and affirmative defenses regarding the '908 patent almost five months ago. The California court has since ruled on (and denied) a potentially dispositive motion filed by Dryft Sciences and conducted a scheduling conference. Discovery is now underway.

Most recently, Modoral joined Dryft Sciences and Kretek in filing, on February 1, 2021, an *inter partes* review ("IPR") petition challenging the '908 patent. *See* Viceconte Decl., Ex. D (excerpts of IPR petition in *Kretek Int'l, Inc. v. wm17 holding GmbH*, No. IPR20201-00480 (P.T.A.B. Feb. 1, 2021), Paper No. 2).

## III.   THIS ACTION SHOULD BE TRANSFERRED

### A.     Legal Standard

The first-filed rule "requires absent extraordinary circumstances, that cases sharing *substantially similar* subject matter . . . be decided by the court where the litigation was first filed." *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013) (emphasis added). Substantial similarity is "not limited to mirror image cases where the parties and the issues perfectly align." *Id.* at 456; *see also Maximum Human Performance, Inc. v. Dymatize Enter, Inc.*, 2009 WL 2778104, at *4 (D.N.J.

Aug. 27, 2009) ("[T]he issues and parties involved in the two actions need not be identical."). The general rule favoring the forum of the first-filed case applies, "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).

In applying the rule, courts may transfer the later-filed action under 28 U.S.C. § 1404. *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1052–53 (E.D. Pa. 2006). In *Jumara v. State Farm Ins. Co.*, the Third Circuit identified private and public interest factors (the "*Jumara* factors") to consider for a transfer under § 1404. 55 F.3d 873, 883 (3d Cir. 1995). The private factors include:

> [1] [The] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses . . . , [and][6] the location of books and records.

The public interest factors include:

> [1] [T]he enforceability of the judgment, [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion, [4] the local interest in deciding local controversies at home, [and] [5] the public policies of the fora.

*Id.* at 879–80. Further, this Court "has often noted that a motion to transfer may be granted if there is a related case which has been first filed or otherwise is the more

appropriate vehicle to litigate the issues between the parties." *Fuisz Pharma LLC v. Theranos, Inc.*, 2012 WL 1820642, at *10 (D. Del. May 18, 2012) (internal quotations omitted).

### B.   The First-filed Forum Is Preferred

The first-filed rule supports transfer of this action because this case mirrors the claims at issue in the California actions. The rule dictates that, generally, "the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941). Application of the rule avoids duplicative litigation, the possibility of inconsistent results, and waste of judicial and private resources. *See Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 587 (D. Del. 2007); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 455 (D.N.J. 1999).

The first-filed rule applies even when the subject matter of the suits is not identical, so long as there is "substantial overlap." *Synthes*, 978 F. Supp. 2d at 457. Here, Modoral's claims are nearly identical to those at issue in the California actions, *see supra* Section II, as they involve the same intellectual property, an overlapping nucleus of facts, and nearly the same legal issues. The first-filed rule exists to prevent such duplicative cases from running in parallel, draining public and private resources.

Modoral's absence from the California actions does not diminish the force of the rule's rationale. "The Third Circuit applies the first-filed rule to litigation that involves the same subject matter, not necessarily the same parties." *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 585 (D. Del. 2007); *see also Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 409 n.23 (E.D. Pa. 2008) (collecting Third Circuit cases). Applying the rule is particularly appropriate here, where Modoral purportedly purchased all assets of the California defendant, Dryft Sciences, D.I. 1 ¶ 10, essentially stepping into Dryft Sciences's shoes.

Indeed, in *Interactive Fitness Holdings, LLC, v. Icon Health & Fitness, Inc.*, the court applied the first-filed rule to transfer a second-filed declaratory judgment ("DJ") action in a near-identical posture. 2011 WL 1302633, at *3 (N.D. Cal. Apr. 5, 2011). In *Interactive Fitness*, the patentee first filed a Utah action accusing Expresso Fitness Corp. of infringing two patents directed to exercise cycles. *Id.* at *1. About a year later, after Interactive Fitness Holdings, LLC had "purchased Expresso's assets," Interactive filed the second-filed DJ action in California, seeking a declaration that its continued sales of the Expresso cycles did not infringe the same patents asserted in Utah. *Id.* The patentee then sought transfer of that DJ action to Utah, where its suit against Expresso was ongoing. *Id.*

Because the Utah action was first-filed and implicated "precisely the same issues," the California court transferred the case to Utah. *Id.* at \*2. The court cited opinions from this circuit and others invoking the first-filed rule, despite the presence of "legally distinct" parties. *Id.* at \*2–\*3 (citing *Advanta Corp. v. Visa U.S.A., Inc.*, 1997 WL 88906, at \*2–\*3 (E.D. Pa. Feb. 19, 1997) (applying the rule to business partners); *Horton Archery, LLC v. Am. Hunting Innovations, LLC*, 2010 WL 395572, at \*5 (N.D. Ohio Jan. 27, 2010) (applying the rule to seller and purchaser of accused assets); *Shire*, 543 F. Supp. 2d at 409 (applying the rule to manufacturer and distributor of accused assets)). The court concluded that "Interactive's purchase of Expresso's assets, including the accused product, and its continued sale of that product, support a finding of substantial similarity between Expresso and Interactive for purposes of the first-to-file rule." *Id.* at \*3. The court thus transferred the case to Utah. *Id.*

No daylight separates *Interactive Fitness* and this case warranting departure from the first-filed rule. The California actions are undeniably first-filed and implicate nearly identical claims. And, as in *Interactive Fitness*, the defendant in the first-filed actions, Dryft Sciences, is substantially similar to the DJ plaintiff, Modoral—which purchased the assets of the still-existing defendant in the first-filed actions and continues to sell that defendant's accused product (rebranded DRYFT). Viceconte Dec., Ex. B. And if that were not enough, Dryft Sciences and Modoral's

8

interests are now even more closely aligned, as evidenced by their new joint IPR petition challenging the '908 patent. *See* Viceconte Decl., Ex. D. The substantial similarity between this action and the first-filed California actions thus dictates transfer, as in *Interactive Fitness*.[3]

### C. The Balance of Conveniences Heavily Favors Transfer of this Action to California Under 28 U.S.C. § 1404(a)

#### 1. This Case Could Have Been Brought in California

Under § 1404(a), a court may transfer a case to a district where it "might have been brought." Qualifying districts must (1) have subject matter jurisdiction over the claims; (2) have personal jurisdiction over the parties; and (3) be a proper venue. *See Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). The C.D. Cal. qualifies.

There is no dispute that the C.D. Cal. has subject matter jurisdiction over the patent and trade secret claims overlapping with this action. 18 U.S.C. § 1836 *et seq.*, 28 U.S.C. § 1338.

The C.D. Cal. also has personal jurisdiction over Defendants. Because California's long-arm statute is co-extensive with federal due process, the jurisdictional analysis collapses into a due process analysis. *Ebates Performance*

---

[3] Although the first-filed rule is subject to exceptions (e.g., bad faith, forum shopping, or an anticipatory suit), no such exception applies here. *See Sonion Nederland BV v. Asius Techs. LLC*, 2011 WL 5826047, at *3 (D. Del. Nov. 18, 2011).

*Mktg. v. MyMail, Ltd.*, 2021 U.S. Dist. LEXIS 7786, at *24 (N.D. Cal. Jan. 13, 2021);

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir.

2006).[4]

Here, the C.D. Cal. plainly has personal jurisdiction over Defendants given

their efforts to protect the same intellectual property at issue in Modoral's Complaint

in California courts through California counsel. *See Ebates*, 2021 U.S. Dist. LEXIS

7786, at *27 ("The relevant inquiry for specific personal jurisdiction then becomes

to what extent has the defendant patentee purposefully directed [patent enforcement

activities] at residents of the forum, and the extent to which the declaratory judgment

claim arises out of or relates to those activities." (internal quotations and citations

omitted)); *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1354 (Fed. Cir. 2003)

(finding defendant's trade secret enforcement activity supported personal

jurisdiction over trade secret owner).

In *Ebates*, the plaintiff filed a DJ action in California against a patentee

litigating the same patent in a California court. 2021 U.S. Dist. LEXIS 7786, at *9.

The court found the patentee was subject to specific jurisdiction because the

patentee's "act of litigating" two cases involving the same patents in the California

---

[4] Ninth Circuit law applies to personal-jurisdiction analysis on trade secret claims, while Federal Circuit law applies on patent claims, though the standards are substantially similar. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003).

forum demonstrated that the patentee "purposefully directed its enforcement activities towards the forum state." *Id.* at \*29–\*30. The DJ action also arose out of that conduct because the "patentee's prior infringement cases were aimed at enforcing two patents that are at issue in this case." *Id.* at \*32.

As in *Ebates*, Modoral's second-filed DJ action "arises out of or relates to" Defendants' first-filed actions in California. Indeed, the California actions accuse Modoral's predecessor-in-interest of infringing the same patent and misappropriating the same trade secrets at issue here. Further, Modoral's Complaint explicitly ties itself to Defendants' first-filed California actions by referencing the California trade secret action, D.I. 1 ¶ 11, and reproducing sections of Defendants' November 17, 2020 letter notifying Plaintiff's parent about the California actions, *id.* ¶¶ 12, 13, 15. There is, therefore, little doubt that Modoral's claims arise from Defendants' enforcement activity purposefully directed to California and its residents, Dryft Sciences and Kretek.

Recognizing the weight attributable to enforcement activity, Courts find it "reasonable and fair" to exercise jurisdiction over a patentee suing on the same patent in the same forum. *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996); *see also LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 589 (D.N.J. 2001). Accordingly, the C.D. Cal. has jurisdiction over Defendants.

The C.D. Cal. is also a proper venue. Venue in a DJ action is governed by 28 U.S.C. § 1391. *See Am. Cyanamid Co. v. Eli Lilly & Co.*, 903 F. Supp. 781, 784 n.1 (D.N.J. 1995). Section 1391(b)(1) provides that venue lays in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Because corporate defendants are deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction," § 1391(c)(2), Defendants reside in the C.D. Cal., rendering it a proper venue.

For at least these reasons, Modoral could have brought this action in California. And as explained below, the *Jumara* factors weigh in favor of a transfer to the C.D. Cal.

## 2.   Private Interest Factors Favor Transfer

**Plaintiff's Choice of Forum.** To the extent given weight, this factor is neutral. Though plaintiff's choice of forum is accorded deference, that deference diminishes where, as here, plaintiff's principal place of business is located elsewhere. *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012). Modoral is not incorporated in Delaware and its principal place of business is in North Carolina. Viceconte Dec., Ex. E. Its choice of forum is thus entitled to little weight.

12

Modoral's decision to file here also suggests forum shopping. Defendants November 17, 2020 letter asked BAT if it intended to intervene in the California actions or if it and its subsidiaries (e.g., Modoral) would agree to be bound by any judgment rendered against Dryft Sciences in California. Rather than responding by letter or intervening in California, Modoral raced to file its duplicative claims in Delaware (as evidenced by its threadbare Complaint, *see infra* Section V)—a jurisdiction with no significant connection to the underlying dispute. Because Modoral's choice appears motivated by forum shopping, it is owed even less deference. *See, e.g.*, *Margulis v. Stryker Corp.*, 2019 U.S. Dist. LEXIS 214965, at *13 (D.N.J. Nov. 12, 2019). This factor is thus neutral, at best.

**Defendant's Preferred Forum.** This factor weighs in favor of transfer because Defendants prefer the transferee forum. Litigating Modoral's claims in the C.D. Cal. would also lead to the resulting efficiencies served by the first-filed rule.[5]

**Where the Claims Arose.** This factor weighs in favor of transfer because Modoral's DJ claims arise from conduct that occurred in California. Specifically, Modoral's claims arise from its acquisition of the assets of California-based Dryft Sciences, from Defendants' enforcement actions in California, and from

---

[5] Due to Modoral's recent alignment with the California defendants in challenging the '908 patent's validity in an IPR petition, Defendants plan to add Modoral as a party in at least the California patent action or seek consolidation of the two actions. While the California defendants have sought to stay the California patent action, the California plaintiffs intend to oppose that motion and expect it will be denied.

Defendants' November 17, 2020 letter providing notice of those California actions. *See supra* Section III.C.1.

Modoral's claims also arise from the conduct of its predecessor-in-interest, Dryft Sciences. Modoral's trade secret claim arose where the original misappropriation occurred: California. Indeed, Modoral's predecessor conceded that "[a]ny alleged actions by [Dryft Sciences and Kretek] relating to [the] purported trade secrets necessarily occurred in California, where [Dryft Sciences and Kretek] reside." No. 2:20-cv-08729-SB-MRW (C.D. Cal.), D.I. 36, at 3–4.

Modoral's patent claims "arose where the allegedly infringing products were designed and manufactured." *Wacoh*, 845 F. Supp. 2d at 602. Dryft Sciences and Kretek manufactured and distributed DRYFT, and each is headquartered in California. Accordingly, this factor also favors transfer—especially since none of Modoral's claims arose in Delaware.

**Convenience of the Parties.** This factor weighs in favor of transfer. Litigating in the C.D. Cal. is far more convenient given the efficiencies of litigating near-identical issues in one forum. *See Corixa Corp. v. IDEC Pharm. Corp.*, 2002 WL 265094, at *3 (D. Del. Feb. 25, 2002) ("Bringing witnesses and relevant documents to only one location . . . minimizes the level of disruption . . . .").

First, Modoral's business dealings with California-based Dryft Sciences evidence that litigating in California presents little, if any, burden. Modoral

14

purchased Dryft Sciences's assets only a few months ago, and the distance between North Carolina and California did not impede that transaction.

Second, Modoral cannot reasonably claim that traveling to California is burdensome. Modoral's ultimate parent is a company of 53,000+ employees, Viceconte Dec., Ex. F, dwarfing the ~6,300 employees of Defendants' ultimate parent, *id.* Ex. G. Modoral is thus well equipped to litigate in California.

Third, while Modoral is not currently a party to the California actions, it no doubt tracks those proceedings and will continue to do so. Indeed, Modoral is already coordinating with the California-based Kretek and Dryft Sciences to challenge the '908 patent at the PTAB. *See* Viceconte Decl., Ex. D. Given that, litigating in California poses no large hurdle.

For the above reasons, this factor also favors transfer.

**Convenience of the Witnesses.** This factor weighs in favor of transfer because testifying in two districts overburdens witnesses; and California is otherwise more convenient for non-party witnesses.

Because the first-filed California actions share the same subject matter with the instant action, critical fact witnesses would have to testify to the same issues in two venues on either side of the country if this action stays in Delaware. "[A]ll the material witnesses in this dispute . . . will be in California already to litigate the related matter now pending in the [Central] District of California. Requiring that

they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice." *Corixa Corp.*, 2002 WL 265094, at *4. It is not fair or just to double any witness's burden.

As to specific non-party witnesses, Dryft Sciences and Kretek specified in the California trade secret action that relevant witnesses are located in California and Sweden. They stated California is home to most of Kretek's employee witnesses, all of Dryft Sciences's witnesses, and two relevant former Kretek employees. No. 2:20-cv-08729-SB-MRW (C.D. Cal.), D.I. 13, at 17. None is a party to this action, yet their testimony is likely critical given: (1) Modoral's freedom-to-operate claim is predicated on the allegations at issue in the California trade secret action; and (2) Modoral's predecessor's concession that "[a]ny alleged actions . . . relating to [the] purported trade secrets necessarily occurred in California." No. 2:20-cv-08729-SB-MRW (C.D. Cal.), D.I. 36, at 3–4. As to the Swedish witnesses, Dryft Sciences and Kretek alleged that the proximity to LAX rendered the C.D. Cal. more convenient for the relevant Swedish witnesses. *Id.* That rationale, if it applies at all, does so equally here.

Accordingly, this factor also favors transfer.

**Location of Evidence.** This factor weighs heavily in favor of transfer because most of the relevant evidence will come from the accused IP infringer, Dryft

Sciences—Modoral's own predecessor-in-interest—located in California. No known evidence is located in Delaware.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Dryft Sciences and Kretek manufactured and distributed DRYFT, respectively. Again, both are located in California. These entities hold evidence relevant to Modoral's freedom-to-operate claim, as that claim is predicated on Dryft Sciences and Kretek's alleged misappropriations. And although Dryft Sciences may have sold the DRYFT assets, it has an obligation to preserve evidence relevant to the claims in the ongoing California actions. Because no comparable evidence is presumably located in Delaware, this factor strongly favors transfer.

### 3. Public Interest Factors Favor Transfer

**Practical Considerations.** This factor weighs in favor of transfer because the subject matter of this case is nearly identical to that of the first-filed California action. "In examining this *Jumara* factor, our Court has often cited the existence of related lawsuits in one of the fora at issue as being an important 'practical consideration' to be taken into account." *Fuisz Pharma*, 2012 WL 1820642, at *16. As discussed above, the same intellectual property and nearly identical legal and

17

factual issues are before the California court. Moreover, Modoral is substantially similar to an accused party in the California actions, as Modoral is Dryft Sciences's successor-in-interest. *See* Viceconte Decl., Ex. D at 3 (identifying Modoral and Dryft Sciences as real-parties-in-interest).

Dryft Sciences's infringement of the '908 patent, the '908 patent's validity, and whether Dryft Sciences misappropriated Defendants' trade secrets are all at issue in the California actions. The California actions are moving forward and if this action were to proceed in parallel, two courts would be considering these same questions, "generat[ing] significant expense, inefficiency and the prospect of inconsistent judgements." *Fuisz Pharma*, 2012 WL 1820642, at *17. Accordingly, this factor strongly favors transfer.

**Administrative Difficulty.** This factor weighs in favor of transfer because the C.D. Cal. is less congested than this Court. Specifically, the most recent National Judicial Caseload statistics show that the median time-to-trial for civil cases in the C.D. Cal. is 20.0 months, as opposed to the District of Delaware's 28.4 months. Viceconte Dec., Ex. H. This disparity weighs in favor of transfer.

**Local Interests.** This factor favors transfer because Dryft Sciences and Kretek, two California residents, infringed the '908 patent and committed trade secret misappropriation to commercialize the DRYFT assets purportedly later sold to Modoral. But for that misappropriation, the instant suit would likely not exist.

18

(Modoral's patent claims do not affect this analysis "because a patent infringement action is more properly described as a national controversy." *Segan LLC v. Zynga Inc.*, 2014 U.S. Dist. LEXIS 35685, at *14 (D. Del. Mar. 19, 2014).)

**Public Interest Factors 1 and 5.** These factors are neutral because: (1) a judgment entered in either district is likely to be given full faith and credit; and (5) Defendants know of no public policy peculiar to one forum or the other that would tip the scales.

## IV.   ALTERNATIVELY, THIS ACTION SHOULD BE STAYED

If this Court deems transfer inappropriate, SMNA and Pinkerton request that this action be stayed pending resolution of the California actions. Stay is an appropriate remedy, especially in the view of the first-filed rule, because resolution of the California actions will likely resolve Plaintiffs' claims under at least *res judicata*. Further, a purchaser of assets adjudged to infringe can be precluded from relitigating infringement and invalidity. *See, e.g.*, *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1583 (Fed. Cir. 1986) (infringement judgment followed facility, used to manufacture infringing products, from one party to another); *Am. Equip. Corp. v. Wikomi Mfg. Co.*, 630 F.2d 544 (7th Cir. 1980) (infringement decree followed cement mixing assets transferred from one party to another); *Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335 (7th Cir. 1969) (infringement decree followed outboard motor assets transferred from one party another). Even ignoring *res*

*judicata*, the California court's decision on misappropriation will necessarily simplify the issues related to Modoral's freedom-to-operate claim, because it is predicated on the very same misappropriation claims being adjudicated in California.

For that reason, and because Modoral will likely be bound by the outcome of the California actions under *res judicata*, a stay would be appropriate.

## V.   COUNT I SHOULD BE DISMISSED

SMNA and Pinkerton move to dismiss Modoral's "freedom to operate" claim or for a more definite statement under Federal Rule of Civil Procedure 12(b)(1), (b)(6), and (e).

Count I of the Complaint should be dismissed under Rule 12(b)(1) because Modoral lacks prudential standing. A plaintiff establishes prudential standing by showing that it is asserting its "own legal interests rather than those of third parties." *Lancer Ins. Co. v. Harleysville Mut. Ins.*, 108 F. Supp. 3d 275, 278 (E.D. Pa. 2015) (citation omitted). Count I seeks a declaration that Modoral has "freedom to operate its business without obligation to Defendants for any alleged trade secret misappropriation." D.I. 1 ¶ 20. Modoral's Complaint also states that Dryft Sciences has indemnified Modoral for any misappropriation resulting from the allegations made against Dryft Sciences in the California trade secret action. *Id*. ¶ 11.

Notably, Modoral does not request a judgment that it itself did not misappropriate Defendants' trade secrets. Instead, it seeks a declaration that it has "freedom" from *any* "obligation" arising from Defendants' claims against Dryft Sciences in the California trade secret action. Thus, Modoral effectively seeks to litigate those California trade secret claims—even though it is not party to them and Dryft Sciences has indemnified Modoral for any liabilities arising from them. "Plainly, therefore, [Modoral] is asserting the legal interests of [a] third part[y]," Dryft Sciences, "rather than its own, and thus has no standing to pursue this claim." *Lancer*, 108 F. Supp. 3d at 278. Count I should, therefore, be dismissed under Rule 12(b)(1).

Count I of the Complaint should also be dismissed under Rule 12(b)(6) or Modoral should be required to provide a more definite statement under Rule 12(e). A party may move for a more definite statement under Rule 12(e) when a pleading is "so vague or ambiguous that [Defendants] cannot reasonably prepare a response." Again, Count I requests a declaration that Modoral has "freedom to operate its business without obligation to Defendants for any alleged trade secret misappropriation or other claim of misuse of proprietary information or other related claim, and that Modoral does not owe any obligation to Defendants." D.I. ¶ 21. Dismissal under Rule 12(b)(6) is appropriate because Modoral has failed to even offer "a formulaic recitation of the elements of" its claims, let alone supporting facts

to suggest that it has not misappropriated Defendants' trade secrets. *Princeton Digit. Image Corp. v. Konami Digit. Entm't Inc.*, 2017 WL 239326, at *5 (D. Del. Jan. 19, 2017).

First, this Count does not identify any statute or common-law doctrine that would permit a substantive response. Defendants cannot mount a defense against unknown "other related claim[s]" or the contention that Modoral does not owe "*any* obligation." *See Temp. Servs. v. Am. Int'l Grp.*, 2008 U.S. Dist. LEXIS 136676, at *25–*26 (D.S.C. July 8, 2008) (discretionarily denying DJ claims where the plaintiff sought "a declaration that Defendants have violated unspecified statutes, regulations, and common law requirements"). Second, this Count fails to even allege whether Modoral received any information (or what information) from Dryft Sciences related to Defendants' trade secret allegations pending in California. Because of its unassailable ambiguity and vagueness, Count I should be dismissed under Rule 12(b)(6) or Modoral should have to provide a more definite pleading.

## VI.   CONCLUSION

For at least the reasons discussed above, SMNA and Pinkerton respectfully request that the Court dismiss Count I. If the Court does not dismiss Count I, SMNA and Pinkerton respectfully request that the Court transfer this action to the C.D. Cal. under § 1404 or, in the alternative, stay this action.

Dated:  February 4, 2021

Respectfully submitted,

GIBBONS P.C.

 */s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, DE  19801
Tel:  (302) 518-6322
Fax:  (302) 397-2050
cviceconte@gibbonslaw.com

*Of Counsel:*

Caitlin E. O'Connell, Esq. (*Pro Hac Vice*)
Paul Townsend, Esq. (*Pro Hac Vice*)
Timothy J. May, Esq. (*Pro Hac Vice* motion to be filed)
Bryan C. Diner, Esq. (*Pro Hac Vice* motion to be filed)
Elizabeth A. Niemeyer, Esq. (*Pro Hac Vice* motion to be filed)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
Tel:  (202) 408-4004
Fax: (202) 408-4400
caitlin.o'connell@finnegan.com
paul.townsend@finnegan.com
timothy.may@finnegan.com
bryan.diner@finnegan.com
elizabeth.niemeyer@finnegan.com

*Counsel for Defendants*
*Swedish Match North America LLC and*
*Pinkerton Tobacco Co. LP*